UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| STEPHANIE SUE CARLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:12-cv-195-RLY-WGH |
| | ) | |
| CSX TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON SUBJECT MATTER JURISDICTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Plaintiff, Stephanie Sue Carlson, alleges that the failure of Defendant, CSX Transportation, Inc., to hire her for a Substitute Yardmaster position constituted retaliation and age and sex discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a), and Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).  Carlson also alleges CSX breached the parties' settlement agreement that resolved a previous lawsuit between the parties.[1] After she filed her initial claim *pro se*, Carlson retained counsel and filed a Motion for Leave to File an Amended Complaint.  (Docket #13).  On April 29, 2013, after the motion for leave was fully briefed, the parties briefed the issue of subject matter jurisdiction the request of the court.  The case is ripe for ruling, and for reasons set forth

---

[1] Count I alleges sex discrimination in violation of Title VII, Count II alleges age discrimination in violation of ADEA, and Counts III and IV allege retaliation for protected conduct in violation of Title VII and ADEA, respectively.  Count V is Carlson's breach of contract claim.

1

below, the court finds it has subject matter jurisdiction and **GRANTS** Carlson's motion for leave to file an amended complaint.

I.  Factual Background

Carlson, fifty-three years old, has been employed by CSX since March 2002. During that time, she has been worked continually as a clerk, except for the period from March 2008 until May 2009, when she was worked as a Substitute Yardmaster and participated in CSX's management trainee program. On September 25, 2007, Carlson filed a lawsuit against CSX in the Northern District of Alabama, alleging discrimination under the ADEA and Title VII ("2007 lawsuit"). The parties settled that case and executed a settlement agreement on September 2, 2009. (Amended Compl. ¶ 12). Carlson filed a separate lawsuit in the Southern District of Indiana on May 16, 2011 ("2011 lawsuit"), alleging that CSX violated Title VII by engaging in sex discrimination and retaliation in Alabama and Indiana. *Carlson v. CSX Transp., Inc.*, 2013 WL 869762 (S.D. Ind. Mar. 5, 2013).

On September 1, 2011, while the 2011 lawsuit was pending, Carlson applied for a Substitute Yardmaster position in Evansville, Indiana. After being interviewed, she was ranked last in the hiring pool behind five interviewed candidates, four males and one female. A similarly situated younger male was allegedly selected for the position. (Amended Compl. ¶ 14-16). Carlson filed a complaint with the EEOC, which issued her a Dismissal and Notice of Rights letter on September 13, 2012, and Carlson filed the present action on December 11, 2012.

On March 5, 2013, Carlson's 2011 lawsuit was dismissed for failure to state a claim and for lack of subject matter jurisdiction. Carlson now moves to amend this complaint, and CSX claims her proposed amended complaint would not survive a Rule 12(b)(6) motion to dismiss, making leave to amend futile. Before reaching this issue, the court must determine whether it has subject matter jurisdiction, since a court presented with subject matter jurisdiction and Rule 12(b)(6) questions "must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Kimble v. Postmaster Gen.*, 2012 WL 1833682, at *1 (S.D. Ind. May 18, 2012) (quoting *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)).

## II.  Subject Matter Jurisdiction and Pre-emption

### A.  Legal Standards

#### 1.  Subject Matter Jurisdiction

Subject matter jurisdiction must be examined by a court at every stage of litigation, regardless of whether parties raise the issue. *United Phosphorous, Ltd. v. Angus Chemical Co.,* 322 F.3d 942, 946 (7th Cir.2003), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc.,* 683 F.3d 845 (7th Cir.2012); *Joyce v. Joyce*, 975 F.2d 379, 386 (7th Cir. 1992) ("[p]rompt, *sua sponte* recognition of flaws in subject matter jurisdiction is . . . the district court's duty"). If a court lacks subject matter jurisdiction, it must dismiss the complaint. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). "The court may look beyond the jurisdictional

3

allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Alicea–Hernandez v. Catholic Bishop of Chicago,* 320 F.3d 698, 702 (7th Cir.2003). The burden of proof is normally on the party asserting jurisdiction to prove subject matter jurisdiction exists. *United Phosphorous, Ltd.,* 322 F.3d at 946. Under the RLA, however, the party seeking to avoid jurisdiction must show "minor disputes" exist, which makes arbitral jurisdiction exclusive. *Consolidated Rail Corp. v. Ry. Labor Execs. Ass'n,* 491 U.S. 299, 306–07, 109 S. Ct. 2477, 105 L. Ed. 2d 250 (1989).

        2.     **Pre-emption by the RLA**

The RLA pre-empts otherwise valid federal claims when adjudicating minor disputes would require the court to interpret CBA provisions. 45 U.S.C. § 184; *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 658, 668 (7th Cir. 2001). Minor disputes may arise "out of grievances or out of the interpretation and application of agreements concerning rates of pay, rules, or working conditions," 45 U.S.C. § 151a(5), or "controversies over the meaning of an existing [CBA] in a particular fact situation." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994).

In *Brown*, the Seventh Circuit held that even if a plaintiff's claim "is grounded upon rights which stem from some source other than the CBA . . . the claim will be preempted if it cannot be adjudicated without interpreting the CBA, or if it can be conclusively resolved by interpreting the CBA." 254 F.3d at 658 (internal quotation omitted). However, a valid claim should not be dismissed "merely because certain

4

provisions of the CBA must be examined and weighed as a relevant but non-dispositive factor in deciding a claim or defense." *Id*. at 668.

### B. Discussion

Carlson claims that CBA interpretation is unnecessary in this case because her allegations are fundamentally different than those in the 2011 lawsuit. In that lawsuit, she alleged retaliation and sex discrimination when CSX refused to restore her to the Substitute Yardmaster position following her resignation from the Management Trainee program; she also asserted that she had Substitute Yardmaster seniority, as defined by the CBA. The court dismissed portions of Carlson's 2011 lawsuit because it would be required to interpret the CBA's seniority provisions, which were provided to the court as evidence. *Carlson*, 2013 WL 2013 WL 869762, at *9.

In the present lawsuit, Carlson is not alleging CSX violated the CBA "or that CSX's failure to promote her was due to a disputed portion of the Yardmaster CBA." Therefore, she argues, her discrimination and retaliation claims are not substantially dependent on CBA analysis. Rather, her allegations present purely factual questions about CSX's conduct, which do not require CBA interpretation, *Hawaiian Airlines*, 512 U.S. at 261-62, and the RLA does not preempt her Title VII and ADEA claims. *Anderson v. United Air Lines, Inc.*, 2010 WL 653491, at *3 (N.D. Ill. Feb. 22, 2010) (citing *Brown*, 254 F.3d at 668). In this lawsuit, the issue is simply whether her past experience qualifies her to be promoted to the new position. The court is not aware of any CBA section dealing with qualifications for new hires, so no CBA interpretation appears to be necessary to dispose of her claims.

CSX notes that in Carlson's initial complaint, she requested that her seniority be restored and her probationary period waived, among other relief. She also referenced her seniority as a clerk as a supporting fact for her retaliation claim. However, all references to seniority were removed from the Amended Complaint. While Carlson's Amended Complaint does allege that she met or exceeded performance expectations at all times, including her time as a Substitute Yardmaster, CSX has not identified any portions of the Substitute Yardmaster CBA dealing with job performance. The court concludes that, at this stage, Carlson's claims are not substantially dependent on the CBA terms, and the court therefore has subject matter jurisdiction.

### III. Leave to Amend

#### A. Legal Standards

A party seeking to amend its complaint later than 15 days after the initial complaint is filed must seek leave of the court. District courts "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Courts may, however, "deny leave to amend where there is undue delay, bad faith, dilatory motive . . . undue prejudice to the defendants, or where the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (internal quotation omitted). Granting leave is futile if the amended complaint would be unable to survive a Rule 12(b)(6) motion to dismiss. *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001). CSX argues that since Carlson's amended complaint could not survive a Rule 12(b)(6) motion, granting leave would be futile and Carlson's motion for leave should be denied as futile.

6

Pursuant to Rule 12(b)(6), claims must be dismissed if they fail "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To comply with the pleading requirements in Rule 8(a)(2), a complaint must "give the defendant fair notice of what the . . . claim is and the ground on which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). A complaint need not make detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but it must contain more than "an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Additionally, to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," not when the plaintiff only raises a "sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The court must treat the factual allegations in the complaint as true, construe the allegations liberally, and draw all reasonable inferences in the plaintiff's favor. See *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005) (internal quotation omitted). Accordingly, the facts outlined above are accepted as Plaintiff alleges them.

7

**B.     Discussion**

**1.     Counts I and II:  Title VII and ADEA Discrimination Claims**

Carlson does not allege any direct age or sex-discriminatory behavior by CSX; the court therefore presumes she is proceeding under the "indirect method" of proof.  Carlson must show through her pleadings that: (1) she is part of the protected classes; (2) she applied for an open position for which she was qualified; (3) she was denied the position; (4) the person hired was not a member of the protected classes and was not more qualified than Carlson.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005) ("[t]his method of analysis is applicable whether the discrimination alleged is on the basis of sex, when proceeding pursuant to Title VII, or on the basis of age, under the ADEA").

CSX does not dispute that Carlson is in both the Title VII and ADEA protected classes and that she was not hired for the position.  However, CSX argues Carlson's amended discrimination claims are implausible because she fails to set forth the job requirements for the Substitute Yardmaster position; she merely relies on her past yardmaster training to establish herself as qualified.  For her ADEA claim, she also failed to allege the ages of other applicants in the pool ranked ahead of her.  CSX argues that without such specific facts, Carlson is asking for preferential consideration of her past work as a substitute yardmaster.  Since CSX claims that neither applicants nor courts can dictate the qualifications for a position, and claims she has only pled conclusory facts to show she meets the prima facie elements, her claim would not withstand a motion to dismiss, and leave to amend is futile.

This court concludes that asking Carlson to plead with such specificity imposes too great a burden on her at this early stage.[2] Her allegation that her experience as a Substitute Yardmaster—which she alone among the applicants had—made her more qualified for the position is facially plausible. Carlson also alleges that at least one of the people hired was a younger male, and that she was placed last in the hiring pool behind substantially younger applicants. (Amended Compl. ¶ 16). While CSX notes that she left the Substitute Yardmaster training program prior to its completion, it presents no evidence that Carlson leaving renders her unqualified. Carlson need not, as CSX claims, list the age or names of the other applicants at this early stage. *See Iqbal*, 556 U.S. at 678 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era."). Carlson has pled the prima facie elements to put CSX on notice of her sex and age discrimination claims.

CSX raises two additional arguments as to why Carlson's ADEA claim is facially implausible. First, CSX claims that Carlson must show more than that her age was a motivating factor in CSX's decision not to hire her for the substitute yardmaster position; she must show that "but for" her age, the adverse action would not have happened. *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). *Gross*, however, was decided by a jury verdict, *id.* at 170-71, and Court's language does not suggest it intended to impose such a burden on a plaintiff at the pleading stage, and

---

[2] CSX, in support of its argument, directs the court to *Paulcheck v. Union Pacific R. Co.*, 2011 WL 5867962, at *5 (N.D. Ill. Nov. 22, 2011)). *Paulcheck*, like many of the cases cited by CSX, is inapposite because that court was ruling on a defendant's motion for summary judgment, not determining whether a plaintiff's claims would survive a Rule 12(b)(6) motion. *Id.* at *1.

CSX's reliance on the case is misplaced. Even assuming that the *Gross* Court required this, Carlson has alleged she "was not selected for the Substitute Yardmaster position because of her age." (Amended Compl. ¶ 17). This is a sufficient showing of "but for" causation at this stage. Second, CSX asks the court to "apply notions of common sense" and hold that, because she failed to allege age discrimination in the 2011 lawsuit, her age discrimination claim in this case is facially implausible. *Iqbal*, 556 U.S. at 679. However, the facts in this case are distinct from the 2011 lawsuit, and the court would decline to dismiss Carlson's claims simply because her 2011 lawsuit did not allege age discrimination.

Because Carlson's amended discrimination claims are facially plausible and satisfy all four elements required under Title VII and ADEA, they would survive a motion to dismiss. Therefore, they are not futile, and Carlson's motion for leave to amend is granted for Counts I and II.

### 2. Counts III and IV: Title VII and ADEA Retaliation Claims

To establish a prima facie Title VII or ADEA retaliation claim, Carlson must show that: (1) she undertook statutorily protected conduct; (2) she suffered an adverse employment action; (3) there is a causal connection between elements one and two. *Debs v. N.E. Ill. Univ.*, 153 F.3d 390, 397 (7th Cir. 1998) (quoting *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1309 (7th Cir. 1997)). Carlson claims that her being passed over for the Substitute Yardmaster position was in retaliation for her previous EEOC complaints and lawsuits against CSX.

CSX alleges that Carlson's Amended Complaint is insufficient because she failed to allege "but-for" causation between her previous EEOC charges and lawsuits and not being promoted to the position. *Gross*, 557 U.S. at 177; *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). CSX also notes that courts have found that a retaliation claim could not be sustained when as little as two months passed between the protected conduct and retaliatory act and the plaintiff alleged no additional supporting facts. *Carlson*, 2013 WL 869762, at *6 (citing *DeFranco v. Wolfe*, 387 Fed. App'x 147, 155 (3d Cir. 2010); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997); *Hughs v. Derwinsxki*, 967 F.2d 1168, 1174-75 (7th Cir. 1992); *Antonson v. United Armord Servs., Inc.*, 2002 WL 221605, at *3 (N.D. Ill. Feb. 12, 2002)). Over four months elapsed between Carlson's protected conduct—filing the 2011 lawsuit—and her not being hired for the Substitute Yardmaster position, and Carlson alleged no additional facts supporting a claim of retaliation. Therefore, CSX argues, Carlson's Title VII and ADEA retaliation allegations are not plausible and should be dismissed.

The court disagrees. Her allegations—that she undertook protected actions against CSX and, consequently, CSX did not hire her for the Substitute Yardmaster position—are sufficient for the court to infer that CSX may have had retaliatory animus in passing Carlson over for the position. Neither the *Gross* nor the *Fairley* Court required a plaintiff to show "but for" causation to survive a motion to dismiss,[3] and this court declines to require Carlson to do so at this stage.

---

[3] *Fairley* was an appeal from a grant of summary judgment. 578 F.3d 518.

11

In the 2011 lawsuit, the court concluded that Carlson's retaliation claims were not plausible since there were gaps of five and eight months between Carlson's protected conduct and CSX's alleged retaliation, with no allegations beyond suspicious timing. *Carlson*, 2013 WL 869762, at *7. However, neither the court nor the parties in the 2011 lawsuit differentiated between a plaintiff's burden at the pleading versus summary judgment stages. Carlson claims that the cases cited by Defendants and the court in the 2011 lawsuit are inapposite, since they pertain to motions for summary judgment. Holdings from retaliation cases decided on summary judgment are generally inapplicable to cases at the motion to dismiss stage. *See ACLU of Ill. v. City of Chicago*, 2011 WL 4498959, at *3 (N.D. Ill. Sept. 23, 2011). The *ACLU* court noted that requiring a plaintiff to show more than suspicious timing in her initial pleadings would be an unfair burden, since the plaintiff would not have the benefit of discovery to identify facts supporting her claims. *Id.* (citing *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996).

Upon consideration, the court agrees with Carlson and would decline to dismiss her claim at this stage simply because more than four months passed between her protected conduct and the adverse employment action. Since Carlson's Amended Complaint satisfies the required elements and is plausible, the court finds that her amended complaint would survive a Rule 12(b)(6) motion. Leave to amend is therefore not futile, and Carlson's motion is hereby granted for Counts III and IV.[4]

---

[4] CSX asks the court to consider the protected activity as occurring on March 3, 2011, the date on which she filed her initial lawsuit in Alabama, which was later consolidated with her Indiana

### 3.     Count V:  Breach of Contract

Carlson alleges that CSX violated the settlement agreement governing the 2007 lawsuit by failing to hire her for the Substitute Yardmaster position.  (Amended Compl. ¶¶ 16, 39-40).  CSX claims that, because Carlson has restated barebones, conclusory allegations deemed insufficient by the court in the 2011 lawsuit, *Carlson*, 2013 WL 869762, at * 9, Carlson's breach of contract claim in the present lawsuit should similarly be dismissed.  However, unlike in the 2011 lawsuit, the settlement agreement was properly submitted to the court.  The court concludes that CSX may have retaliated against Carlson for her 2007 lawsuit, in addition to the 2011 lawsuit, in violation of the settlement agreement.  (Docket #26 ¶ 11).  Since the contract is treated as part of the pleadings, *Wright v. Assoc. Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994), the court finds that Carlson has sufficiently pled causation, and her motion for leave to amend Count V is granted.

### 4.     **Timeliness of complaints**

CSX finally claims that Carlson's Title VII and ADEA claims are time-barred by failing to file suit within 90 days of receiving her right-to-sue letter from the EEOC, which CSX claims happened on January 30, 2012.  *See Houston v. Sidley & Austin*, 185 F.3d 837, 838-39 (7th Cir. 1999).  CSX is mistaken; Carlson actually filed her EEOC complaint on January 30, 2012.  She did not receive her EEOC letter until September 13,

---

claims to form the 2011 lawsuit.  (Defendant's Response at 9 n.3).  Even accepting this date—and that seven months would have elapsed between the protected conduct and retaliatory action—it is not so long a time period that the court would consider Carlson's claims as implausible.

2012, and she filed her complaint on December 11, 2012, within the 90 day limitations period. (Plaintiff's Reply at 10). The claims are not time-barred.

## IV. Conclusion

For the foregoing reasons, Carlson's Motion for Leave to File an Amended Complaint (Docket #13) is **GRANTED.** Carlson shall file her Amended Complaint within 5 business days. CSX will have 21 days from the date of this Entry to answer the Amended Complaint.

**SO ORDERED** this 24th day of July 2013.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.