UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| STEPHANIE SUE CARLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:12-cv-00195-RLY-WGH |
| | ) | |
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Stephanie Sue Carlson, brings age and sex discrimination and retaliation claims against her employer, defendant CSX Transportation, Inc., under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et. seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e)(2)–(3). She also brings a related claim for breach of contract, although she acknowledges that success on that claim hinges on the success of her retaliation claims. CSXT now moves for summary judgment on all claims. For the reasons set forth below, the Motion is **GRANTED**.

I.     **Standard**

Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

1

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant has met the standard, the court reviews the record as a whole and draws all reasonable inferences in favor of the nonmoving party. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (citations omitted). To survive summary judgment, the nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Whether a party asserts that a fact is genuinely disputed or undisputed, that party must support its assertion either by citing specific materials in the record, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute . . ." Fed. R. Civ. P. 56(c)(1)(A)–(B).

A material issue of fact exists only if resolving the factual issue might change the outcome of the case under the governing law. *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992) (citation omitted). A genuine issue of fact exists only if there is sufficient evidence presented favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 250. The court may not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Board of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010).

**II.     Background**

Carlson began her career with CSXT in March 2002 and has since worked at various rail yards of different size and complexity. (Filing No. 64 at 6). She primarily held clerk positions. (*Id.*). As a clerk, her duties included hauling crews, inputting

2

payroll, stocking supplies, installing printer ribbons, calling clerks and yardmasters to work, dumping trash, cleaning facilities, supervising crews, performing customer services, and computer input. (Filing No. 65-2 at 1–2). Between March 2008 and January 2009, Carlson also worked as a substitute yardmaster in Birmingham, Alabama. (*Id.* at 2). A substitute yardmaster performs yardmaster duties but has not yet acquired the requisite seniority pursuant to the governing collective bargaining agreement. (Filing No. 65-8 at 4). Substitute yardmasters work on an "as needed" basis and assume managerial and supervisory duties to ensure safe and efficient train movement. (Filing No. 65-4 at 2). While performing in this capacity, Carlson completed the job-related trainings and was even promoted to a management training program in Louisville, Kentucky.[1] (Filing No. 65-2 at 3).

In September 2011, Carlson applied for a substitute yardmaster position in Evansville, Indiana. (Filing No. 64 at 7). Specific duties included supervising and assigning work to yard crews, ensuring regulatory compliance, overseeing in-bound and out-bound train movement, and using a computer to retrieve, transmit, and document information on train movement. (Filing No. 65-4 at 2). A substitute yardmaster must also prepare summaries documenting work status, repairs, inspections, and any problems

---

[1] Carlson claims that she left the management training program prematurely due to hostile workplace conditions. (Filing No. 65-2 at 3). These alleged events, *inter alia*, gave rise to Carlson's March 2011 lawsuit against CSXT filed in the Northern District of Alabama. In May 2011, Carlson consolidated the March 2011 complaint with another complaint containing new allegations filed in this court, No. 3:11-cv-00066, which is pending further proceedings. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 834 (7th Cir. 2014) (reversing the court's grant of CSXT's Motion to Dismiss).

encountered in the yard. (*Id.*). The job posting set forth the minimum qualifications: applicants must be 18 years of age or older, have a high school diploma or GED and valid driver's license, and have strong analytical and organizational skills, computer literacy, and an ability to communicate with employees and management. (*Id.* at 3). The posting also stated that CSXT preferred applicants who had one year of railroad experience and at least one year of supervisory experience. (*Id.*).

The hiring process involves two selection phases. (*See* Filing No. 65-5 at 3–5). It begins when an applicant applies to a specific job posting via the company website. (*See* Filing No. 65-4). Applicants who meet the minimum requirements, which may include certain skill assessments, are set aside for screening. (Filing No. 65-5 at 3–5). From this pool, Dennis Fleming, a Manager of Recruiting for CSXT, screens the applicants—reviewing individual skills and work histories—to determine who will proceed to the in-person "manager interview." (*Id.*). Generally, a final hiring decision is made following the manager interview. (*See* Filing No. 65-8 at 6).

Fleming and Michael Parham, the CSXT Terminal Manager in Evansville, conducted the interviews in Evansville on October 4, 2011. (*Id.*). Fleming selected Carlson and five other candidates to interview. (*Id.*). At the very least, this meant that Carlson satisfied the minimum requirements, which included a typing assessment. (Filing No. 65-5 at 5). When Carlson received her interview notice, she had already scheduled to use vacation time on October 4 to attend to personal business out of town. (Filing No. 65-1 at 9). The notice, however, stated that an applicant's inability to attend the interview, regardless of the reason, would result in forfeiture of the applicant's

4

candidacy. (*See* Filing No. 65-3 at 2). Notwithstanding the letter and upon Carlson's request, Fleming agreed to conduct a phone interview with Carlson in lieu of the in-person session. (Filing No. 65-8 at 6). Both interviewers testified that the accommodation did not negatively impact Carlson's candidacy. (Filing No. 58-4 at 3; Filing No. 58-5 at 3). Notably, Carlson testified that Fleming did her a favor by allowing the phone interview and that she appreciated the accommodation. (Filing No. 65-1 at 11).

At the time of the interview, Carlson was fifty-two years of age; the other five candidates—four men and one woman—were all under the age of forty. (Filing No. 64 at 6, 11). Together Fleming and Parham interviewed each candidate using a standard questionnaire that inquired about education and computer skills, work experience, and knowledge of train yards and the role of the yardmaster. (*See, e.g.*, Filing No. 65-7). For each interview, Fleming recorded notes on the questionnaire, and he and Parham then scored the candidates based on interview performance and prior work experience. (Filing No. 65-8 at 6). They combined the two scores and ranked the candidates numerically. (*Id.*).

The candidate with the highest score, Jason Melton, was ultimately selected for the position. (*Id.*). Carlson, with the lowest combined score, ranked last among the candidates despite her prior experience as a substitute yardmaster, a credential absent from the other résumés. (*See id.* at 6–7). Each candidate except Carlson, however, had prior experience as a conductor or engineer—positions entailing "yard experience"— which both Fleming and Parham valued because a substitute yardmaster oversees the

5

work of conductors and engineers as they build and move trains within the yard. (*Id.*; Filing No. 58-4 at 2; Filing No. 58-5 at 2). At the time of the interview, Melton had eleven years of experience with CSXT, first as a conductor and then an engineer. (Filing No. 65-9 at 2). Fleming and Parham testified that Melton demonstrated the greatest understanding of the Evansville yard operations and CSXT's expectations for a substitute yardmaster. (Filing No. 58-4 at 2; Filing No. 58-5 at 2).

Carlson claims that she was denied the promotion because of her age and sex. Carlson also claims that CSXT's failure to promote her amounts to retaliation for prior discrimination charges that she filed with the Equal Employment Opportunity Commission ("EEOC") and a related lawsuit filed in May 2011. Finally, Carlson brings a claim for breach of contract, asserting that CSXT violated the anti-retaliation clause in a settlement agreement that Carlson and CSXT reached in connection with a 2007 lawsuit.

## III. Discussion

Carlson has abandoned her claim of sex discrimination under Title VII, thereby waiving any argument in support thereof. (*See* Filing No. 64 at 2 n.2). Accordingly, the Court **GRANTS** summary judgment in favor of CSXT on that claim. The court now turns to Carlson's age discrimination and retaliation claims.

### A. Age Discrimination

The ADEA makes it unlawful for an employer to discriminate against an individual because of his or her age. 29 U.S.C. § 623(a)(1). A plaintiff has the burden of proving that age was the "but-for" cause of the adverse employment action. *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 177–78, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009).

6

Thus, to survive summary judgment, Carlson must present sufficient evidence such that a reasonable jury could find that her age was the but-for cause of CSXT's decision not to promote her. *See Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012) (citing *Anderson*, 477 U.S. at 248). A plaintiff may produce direct evidence of age discrimination or offer evidence indirectly under the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003). Carlson proceeds under the *McDonnell Douglas* evidentiary framework. (Filing No. 64 at 23).

      **i.**     ***Prima Facie* case**

To make a *prima facie* case of age discrimination in the failure-to-promote context, the plaintiff must show that: (1) she belongs to a protected class, (2) she applied for and was qualified for the position sought, (3) she was rejected for the position, and (4) the employer granted the promotion to someone outside the protected group who is similarly or less qualified than Carlson. *Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005) (citing *Grayson*, 317 F.3d at 748). If the plaintiff can make a *prima facie* case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for not promoting her. *Id.* That shifts the burden back to the plaintiff to produce evidence sufficient for a jury to find that the employer's explanation is pretext. *Id.* The parties do not dispute whether Carlson has satisfied the first three prongs.

CSXT argues that Carlson's *prima facie* case fails the fourth prong because Melton was not similarly situated to Carlson. "Similarly situated" means only that the plaintiff and members of the comparison group are comparable in "all material respects."

*Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007) (quoting *Crawford v. Indiana Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006)). In other words, a plaintiff must show that she and the comparators share sufficient similarities so as to suggest that the employer singled out the plaintiff for worse treatment. *Id.* The specific factors relevant to the inquiry depend on the context of the adverse employment action. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000). In failure-to-promote cases, the plaintiff must show that she was as qualified as the comparators for the position sought. *Grayson*, 317 F.3d at 749; *see also Stinnett v. City of Chicago*, 630 F.3d 645, 646–47 (7th Cir. 2011) (noting that one's eligibility for promotion does not show that he and those promoted ahead of him were similarly situated); *Murray v. Golden Rule Ins. Co.*, 1:12-cv-01012, 2014 WL 2077053, at *10–11 (S.D. Ind. May 19, 2014). Furthermore, the persons who vied for the promotion must have occupied the same or equivalent positions to be similarly situated. *Id.* (citing *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 651 (7th Cir. 2003)).

To determine whether Carlson satisfies the fourth prong, the court must consider Carlson's position in the company vis-à-vis Melton's. *See Grayson*, 317 F.3d at 749. Carlson worked as a clerk in Evansville, whereas Melton was a conductor for four years before obtaining an engineer position, which he held for approximately seven years. As an engineer, Melton's duties involved operating locomotives during the switching of cars and trains, giving him extensive knowledge of Evansville terminal operations. (Filing No. 65-8 at 6; Filing No. 58-4 at 2–3; Filing No. 58-5 at 2–3). As a clerk, Carlson developed her knowledge of the Evansville yard by hauling engineers, conductors, and

8

yard crews to trains at different locations within and outside the yard. (Filing No. 65-2 at 2–3).

Carlson does not dispute the distinction that Fleming and Parham make between the hands-on "yard work" of an engineer or conductor and the duties of a clerk.[2] (*See* Filing No. 58-4 at 2; Filing No. 58-5 at 2). Rather, Carlson argues that the invitation to interview—an indication that she at least met the minimum requirements—suffices to permit a meaningful comparison between her and Melton. (Filing No. 64 at 24–26). Carlson relies on *Guinto v. Exelon Generation Co.*, No. 06 C 4816, 2008 WL 4547527 (N.D. Ill. Apr. 23, 2008), *aff'd on other grounds*, 341 F. App'x 240 (7th Cir. 2009), for the proposition that if candidates have the minimum qualifications to compete for a promotion, they are similarly situated for the purpose of making a *prima facie* case.

In *Guinto*, the plaintiff applied for a training program as a prerequisite to earn a promotion. 2008 WL 4547527, at *1. The employer ranked younger, less experienced candidates ahead of the plaintiff for consideration, and the plaintiff claimed age discrimination. *Id.* at *5. The substantial age gap between the comparators and plaintiff and their common eligibility to apply for spots in the program satisfied the court that the plaintiff had established the fourth prong. *Id.*

The court finds *Guinto* unpersuasive as applied to the present case. First, the employer in *Guinto* failed to contest the plaintiff's *prima facie* case in the district court and instead relied—albeit successfully—on its proffer of a legitimate, nondiscriminatory

---

[2] As discussed *infra*, Carlson asserts that this consideration constitutes pretext to the extent it serves as CSXT's explanation for not promoting her.

9

explanation for not selecting the plaintiff. 341 F. App'x at 245. Second, the court has no information as to whether the eight candidates selected for the training program previously occupied the same or equivalent position as the plaintiff. *See Guinto*, 2008 WL 4547527, at *1–2, 5 (noting only that each candidate was younger and less experienced than plaintiff; and finding that because they all qualified to apply to the program, they were similarly situated). Third, the case law binding on this court requires that the plaintiff and comparison group hold the same or equivalent positions. *See Grayson*, 317 F.3d at 749; *Hoffman-Dombrowski*, 254 F.3d at 651; *see also Jordan*, 396 F.3d at 834 (noting that plaintiff must show that the employer, for no legitimate reason, treated someone differently who occupies the same job level as plaintiff and who has a similar disciplinary record); *Radue*, 219 F.3d at 618 (requiring plaintiffs in reduction-in-force cases to show that the retained employees possessed analogous attributes, experience, education, and qualifications relevant to the position sought). Thus, to the extent the district court in *Guinto* relied solely on the age difference and the fact that the plaintiff and other candidates were merely eligible to apply for a promotion, this court disagrees and instead follows *Grayson*, *Hoffman-Dombrowski*, and *Radue*. Carlson may have more than sufficient experience to succeed as a substitute yardmaster. But absent evidence that she and Melton held sufficiently analogous jobs at CSXT, she cannot establish that they were similarly situated. Accordingly, the court finds that Carlson has failed to make a *prima facie* case that CSXT denied her the promotion because of her age.

### ii. Pretext

Because Carlson failed to make a *prima facie* case, the court need not inquire whether CSXT's explanation for not promoting her—that it deemed her less qualified than Melton—constitutes pretext. The interest of completeness, however, merits brief discussion of the issue.

To establish pretext, a plaintiff must show either that a discriminatory reason motivated an adverse employment action or that the employer's explanation is "unworthy of credence." *Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009) (citation omitted). Thus, specific facts that call the truthfulness of an explanation into doubt may preclude summary judgment. *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003) (citations omitted). Simply pointing to poorly considered employment decisions does not suffice; the plaintiff "must establish that the employer did not honestly believe the reasons it gave for terminating him." *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 718 (7th Cir. 1999) (citation omitted).

Carlson relies principally on qualifications evidence. At the time Carlson applied for the substitute yardmaster position, she had nine years of experience with CSXT as compared to Melton's eleven years. (Filing No. 65-7 at 2; Filing No. 65-9 at 2). Despite her shorter tenure, Carlson stresses the value of her brief stint as a substitute yardmaster in Birmingham and the fact that neither Melton nor any other candidate had such supervisory experience. (Filing No. 64 at 20–21). She also highlights her management training and exposure to CSXT's book of rules and operating procedures for conductors and engineers. (*Id.* at 21). In essence, Carlson engages in a self-assessment to showcase

11

her prior experience as evidence that her credentials surpassed Melton's. (Filing No. 64 at 20–21).

This approach, however, further illustrates the importance of a precedent showing that the plaintiff and promotee have similar credentials and experience. Neither courts nor juries are equipped to function as "super personnel department[s]," substituting the judgment of laymen for that of professionals steeped in their respective fields. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1179–81 (7th Cir. 2002) (citations omitted). Even so, a plaintiff must satisfy an exceedingly high burden to present qualifications evidence in support of pretext. The Court of Appeals for the Seventh Circuit has held that:

> [W]here an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.

*Mlynczak v. Bodman*, 442 F.3d 1050, 1059–60 (7th Cir. 2006) (citing *Millbrook*, 280 F.3d at 1180).

Generously construed, the evidence Carlson presents falls short. Fleming and Parham deemed Melton's yard work experience in Evansville more relevant to the substitute yardmaster position than Carlson's primary background as a clerk. (Filing No. 58-4 at 2; Filing No. 58-5 at 2). Indeed, each of the five candidates who ranked ahead of Carlson had several years of yard work experience. (*See* Filing No. 58-4 at 6–18). The undisputed evidence also shows that Fleming and Parham subjectively believed that Melton, based on his interview performance, demonstrated a superior understanding of

12

the Evansville yard operations as compared to the other applicants. (Filing No. 58-4 at 2–3, 5); *see, e.g.*, *Millbrook*, 280 F.3d at 1176 (noting that anti-discrimination statutes do not divest employers of the ability to make subjective considerations of a job candidate). Although Carlson does not directly dispute this evidence, she cites two occasions in 2010 where CSXT promoted a clerk to substitute yardmaster ahead of an engineer. (Filing No. 65-2 at 4; Filing No. 64 at 22). Without additional facts—such as the identity of the interviewers; the qualifications, background, work histories of the candidates; or circumstances surrounding the promotions—such a cursory attempt to cast doubt on the interviewers' sincerity does not suffice to permit an inference of pretext.

Carlson seems to suggest that CSXT, in a *post hoc* justification, suddenly considered engineer or conductor experience a prerequisite for promotion to substitute yardmaster. (*See* Filing No. 64 at 21–22). But the fact that Fleming selected Carlson to interview signals that CSXT deemed her sufficiently qualified for the job. (*See* Filing No. 65-3 at 2–3; Filing No. 65-7). The undisputed evidence shows, however, that in Fleming's and Parham's experience, the majority of candidates promoted to substitute yardmaster have had engineer and/or conductor experience. (Filing No. 58-4 at 3; Filing No. 58-5 at 2). Moreover, the apparent premium placed on such experience aligns with question three of the interview questionnaire, which queries whether the interviewee is a promoted conductor and/or engineer. (*See, e.g.*, Filing No. 58-4 at 6).

In sum, even if Carlson had established her *prima facie* case, she has presented insufficient evidence to support an inference that CSXT's legitimate, nondiscriminatory

explanation constitutes pretext. Thus, the court enters summary judgment on Carlson's age discrimination claim.

### B. Retaliation

Carlson argues that CSXT's failure to promote her is retaliation for her prior charges filed with the EEOC and subsequent lawsuit against CSXT, which she filed approximately five months prior to CSXT's selection of Melton. Title VII makes unlawful the discrimination against an employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e–3a. Carlson must ultimately show that CSXT's desire to retaliate was the but-for cause of its failure to promote her. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, — U.S. —, 133 S. Ct. 2517, 2528, 186 L. Ed. 2d 503 (2013). She has proceeded under the direct method of proof, which requires her to show: (1) that she engaged in a statutorily protected activity; (2) that CSXT took an adverse employment action against her; and (3) that a causal connection exists between the protected activity and the adverse action. *Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 754 (7th Cir. 2014). The parties do not dispute whether Carlson's May 2011 lawsuit against CSXT qualifies as protected activity or whether CSXT's denial of promotion constitutes an adverse employment action.[3] The parties dispute only the issue of causation.

---

3     The parties dispute, for purposes of the temporal proximity analysis, the measure of time between Carlson's protected activity and when she was denied the promotion. CSXT argues that the initial filing in the Northern District of Alabama is the appropriate date. Carlson counters that because the May 2011 complaint contains new allegations of events occurring in Evansville, where the adverse employment action occurred, it should be considered the date of the protected activity. Although it need not decide the issue, the court agrees that the May 2011 date is more appropriate given that Carlson suffered the adverse action in Evansville.

To defeat summary judgment, the plaintiff must present evidence sufficient for a reasonable jury to conclude that the decision maker had actual knowledge of the protected activity. *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009) (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668–69 (7th Cir. 2006)). Both Fleming and Parham testified that they had no knowledge of Carlson's prior EEOC charges or lawsuit. (Filing No. 58-4 at 3; Filing No. 58-5 at 2–3). To dispute this evidence, Carlson challenges the plausibility that persons (i.e. Fleming) in CSXT's human resources department would not have such information. (Filing No. 64 at 21). She argues, accordingly, that the trier of fact should have the opportunity to gauge the credibility of Fleming and Parham. (*Id.*). The court agrees with Carlson that such self-serving evidence, by itself, lacks much evidentiary weight. But on summary judgment the nonmoving party must do more than simply question the veracity of testimony; she must cite facts in the record that support an assertion that a triable issue exists. Fed. R. Civ. P. 56(a); *see also Mlynczak*, 442 F.3d at 1058 ("[I]f the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed." (citation omitted)). Carlson presents correspondence between the EEOC investigator and the manager of employee relations, Shauna Watson, regarding Carlson's claim of discrimination (Filing No. 65-8); but she presents no evidence suggesting that Fleming, a manager of recruiting, would have been privy to such information. Nor does Carlson present anything more than her belief that Parham, the Evansville terminal manager, knew of her protected activity. (*See* Filing No. 65-2 at 4).

15

Because Carlson has failed to raise an inference that either Fleming or Parham had actual knowledge of her protected activity, she cannot prove that their decision to promote Melton to substitute yardmaster was retaliation for such protected conduct. *See Tomanovich*, 457 F.3d at 668 ("[P]roof of retaliation . . . presupposes that the decision–maker knew that the plaintiff engaged in a statutorily protected activity . . ."). Therefore, the court enters summary judgment on Carlson's retaliation claim.[4]

### C. Breach of Contract

Carlson and CSXT entered into a settlement agreement (Filing No. 59-1 at 4–12) related to a lawsuit she filed against CSXT in 2007 in which she alleged age and sex discrimination and retaliation. The agreement contains an anti-retaliation clause. (*Id.* at 9). Because Carlson failed to present sufficient evidence of retaliation, the court must therefore grant CSXT summary judgment on Carlson's breach of contract claim.

---

[4] Carlson briefly argues that CSXT has constructed a proverbial glass ceiling, barring her from rising in the company ranks. (*See* Filing No. 64 at 19). Carlson cites undisputed evidence that she has applied for over 160 positions to no avail; but she wholly neglects to address CSXT's assertion that in some cases she either did not meet the minimum qualifications or failed to complete the required application process. (Filing No. 65-8 at 5). Moreover, mere evidence that Carlson has applied for countless jobs without success falls far short of showing that CSXT has systematically thwarted her attempts at promotion.

## IV. Conclusion

For the reasons set forth above, CSXT's Motion for Summary Judgment (Filing No. 55) on Carlson's claims of age and sex discrimination, retaliation, and breach of contract are **GRANTED**. Final judgment consistent with this Entry shall now issue.

**SO ORDERED** this 28th day of January 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.